"RUTH GALATI", Petitioner, *v.* "JOHN A. GALATI", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, March 15, 1949.

No appearances.

PANKEN, J. Under the law of our State adultery is a criminal offense. Conviction under the statute for adultery as a crime is rare. It is not easy to convict a person of a crime in the absence of proof of the *corpus delicti*. In a case charging adultery, obtainable testimony is circumstantial. It is not well to convict a person of a crime upon circumstantial evidence. Circumstances often are variable and necessarily susceptible to varied interpretations. No person under our law should be convicted of a crime unless the crime is proven beyond a reasonable doubt. If doubt exists — and circumstantial evidence is often doubtful — the doubt must be resolved in favor of the person charged with the crime.

But whether it is difficult or easy to convict a person of the crime of adultery, it appears to me that a public agency cannot condone by its acts, nor tolerate by its support, the commission of a crime or justify continued criminal conduct. There is a principle in law which is often referred to as *" particeps criminis "*.

Repeatedly, cases have come before me, and I believe before my colleagues in every borough of the city, in which a public agency supported the offspring of an adulterous relationship. This it is duty bound to do; it is a proper discharge of its obligation. But

* Names used herein are fictitious for the purposes of publication.

in many cases that agency continues to support the adulterers, both man and woman, both married but not to each other, and they continue to bring children into the world. There were some cases presented to me in which, fortunately, there were no children involved; yet the department of welfare supported the adulterers, in some instances both being that, and in other instances at least one was an adulterer. There have been cases presented in which a couple conducted themselves brazenly. Frequently their children knew of the condition, and children of other families were parties to the knowledge of the existing condition.

In the case herein the facts as reported by a very able and competent probation officer, Mrs. Howell, disclosed that the department of welfare agreed to accept $5 weekly from the respondent for the support of his wife and their three children. The respondent earns $45 a week, thus reserving to himself and to the woman with whom he lives in adultery, and to the child born out of wedlock, the sum of $40 a week. True, $40 is not an excessive amount for the support of his inamorata and their child, born out of wedlock. True as that may be, the facts as they have been developed would indicate that the department of welfare thought that the inamorata was more deserving than the lawful wife; that the respondent's three children, issue of the marriage which he contracted, were less deserving than the child born to him in consequence of an adulterous relationship. The nub of this unsavory situation is that the department of welfare, by its acceptance of $5 weekly for the support of the wife and the three children, and permitting $40 to the respondent for the support of his inamorata, has tacitly condoned his conduct and justified his abandonment and failure to support his wife and children.

It is for a court having jurisdiction in matters of this kind and having competence to decide what is just and fair to pass upon the facts and arrive at conclusions in situations of this character.

A child born out of wedlock is not to be punished. It is the victim of a man who has failed to assume the responsibility for his three children and had gone afield to conceive a child out of wedlock in adultery. But that is a matter which should be passed upon by a court of competent jurisdiction and not by an agency.

Often I find myself ruminating upon matters submitted to me, and I am puzzled by results in consequence of factual situations. Neglected children, for example, are often deprived of benefits which we accord to delinquent children. It would seem that a delinquent child is cared for more beneficially than is the neglected one, and we never think that if we neglect the neglected,

we shall have the delinquent child; and that is also true, it would seem, insofar as the actions of the agency referred to in this case and in many other cases as well. The inamorata, rather than the wife, received great consideration at the hands of those who are charged with the duty not only of providing the means to sustain life, but also to safeguard the decency and the spiritual side of life in our community.

The Domestic Relations Court of the City of New York is charged by the State and has been invested with power to pass upon the rights of parties when conflict occurs in the domestic relationship. One obligation of this instrumentality to the community is to make every effort to safeguard the family institution, an institution which rests upon the marital relationship. For the time being no administrative agency has been invested with that power, and until such time as the Legislature strips the court of that responsibility and confers it upon an administrative agency, no agency has the right or power to arrogate to itself the duties which have been given to duly constituted judicial tribunals. Public policy demands that.

Law as we know it is not static but it must be stable. All law has been evolved in response to social needs, to good living, and for the protection of the individual in his freedom and in his rights; to protect such individual in the rights which he acquires in consequence of relationships established under the law, and to protect those who are given life in consequence of relationships established under the law. All of that does not deprive those who are victims as the result of transgressions of conventions and law. The law will step in and protect those too, and children born out of wedlock are victims. It is good, good indeed, to realize that law is an organism which is capable of change, in consequence of growth, to meet the needs of man.

It occurred to me, after dictating the opinion herein, that it would be well to add thereto, in explanation of the purpose of the opinion, facts which are not directly related to the established situation in the case herein. The added incidents are illuminative of a condition that has developed in our community and which cries for solution.

In a case heard subsequent to the writing of the forepart of this opinion a situation — not an isolated one, either — was found to exist which is equally as insupportable as is the condition discussed above.

Welfare work is not confined to feeding people. Welfare work calls for rehabilitating, building of character, inculcating spiritual values and decency. Anything that tends in the opposite

direction is a failure from the purposes for which this community spends about two hundred million dollars a year. It is not only a question of making beggars out of people — and that is frightfully bad. It is also something which is even more important and which I don't think can be divorced from beggardom — the destruction of self-respect and a sense of decency, in addition to the undermining of morale.

The majority of the fifteen children of this lady, though the children are now married, are on home relief. All of her daughters with the exception of one are a charge on the public. Each of the daughters has at least two children, who are also public charges and were born to each of them by different men. The department of welfare is not responsible for that condition, but the department of welfare, by undermining the morale of people, their sense of self-respect, decency and self-reliance, fostered — and I use that term advisedly — a lack of morals, decency and self-respect. The lady's daughter, who is before me for neglecting her two children born out of wedlock also— is a child herself. She is only sixteen years of age. She was raised in a house supported by home relief. Her parents have degenerated to an almstaking status. It is not temporary relief they receive. From their point of view it is alms, rather, with which they are provided; and now, after many years of conditioning they deem it their right to demand aid, even though they are in a position to work and support themselves.