### In the Matter of '' Susan Jones ''.*

Children's Court, Westchester County, June 28, 1950.

No appearances.

Smyth, J.  This case illustrates the many burdens which are imposed upon the taxpayers through the activities of immoral persons and through the laxity of welfare departments in not checking up before relief is granted almost without end. The matter came to my attention several weeks ago when I was informed that there were two families, one consisting of seven children and the other of five, living with their mothers in the upper and lower floors respectively of a certain house in one of the cities of the county of Westchester and that all of these children had been born out of wedlock. The paternity of the twelve children had never been established. The public welfare

---

* Names used herein are fictitious for the purposes of publication.

department had for years been supporting the mothers and their respective broods of children. Year after year new children had been appearing upon the scene, and no one seemed to have given any thought as to how the law might be invoked to curb activities of that kind nor as to the resultant responsibilities which were cast upon the taxpayers, to say nothing of the cruel injustices which were visited upon the innocent children. It is only just to observe at this point that the Commissioner of Public Welfare of Westchester County only recently took over the particular welfare district in which these cases are located, and that the greater part of the relief had been extended by the welfare district prior to that transition. I called the matter to the attention of the Westchester County Society for the Prevention of Cruelty to Children and asked them to see what could be done about the matter. They conferred with me and I pointed out to them that the children might be considered neglected as defined by law on the ground that the mother, because of her immorality or depravity, was unfit to have their care. (Children's Court Act, § 6; L. 1922, ch. 547.) If neglect were established, then by virtue of the Children's Court Act and section 494 of the Penal Law, the mother in each case might, if it seemed advisable, be charged with the commission of a misdemeanor in that she had brought about the conditions which caused the children to be neglected. The question then submitted to me was, "What wrongful act has the woman committed that caused these children to be neglected?" It then appeared that the fathers of the children in each case were probably married men who were living in the vicinity with their families, and who were visiting these women clandestinely and having this series of children; consequently that adultery had been committed over and over again, and that obviously the conduct of the women had been not only immoral but unlawful. I also pointed out that the facts developed during the hearings would probably be sufficient to bring the men into court under section 494 of the Penal Law as contributors to the conditions which caused the children to be neglected and in need of the care and protection of the State. Accordingly a petition was filed in each case by the Westchester County Society for the Prevention of Cruelty to Children alleging the successive births of the children, and that the appearance of each one simply added to the burdens of the mother, which she promptly cast upon the taxpayers. After a hearing at which the foregoing facts were established, I duly adjudged the children neglected. It appeared, however, that they had received excel-

lent physical care, and I had to consider the harm which might be done to the children by separating them abruptly even from mothers such as I had before me. I, therefore, left them in the care of their mothers while further plans were considered. Thereupon proceedings under section 494 of the Penal Law were commenced against one of the mothers. She appeared in answer to the petition and admitted the allegations of the petition substantially as above, and I adjudged her guilty of a misdemeanor pursuant to section 494 of the Penal Law. She was interrogated as to the paternity of the children and it appeared that she had started a filiation proceeding in this court in 1935 in which she alleged that one " X " was the father of her two oldest children, but although she appeared at a hearing before me at the time, she states that the said charge was false and that she was guilty of perjury in making it. My impression is that she was urged at that time by the Department of Public Welfare to identify the father of her children, and there at least, the Welfare Department is entitled to some credit for making an effort. I think, however, that the false charge was made to satisfy their pressure. I notice that the man came into court and admitted the charge and was placed under an order to support the children and was placed on probation. Subsequently he disappeared and a warrant which was issued for his arrest could not be executed. Questioned as to the paternity of the last five children she refused to reveal the father's identity. She did admit that he was a married man living with his family in the neighborhood as above stated. The court having advised her of her constitutional right of refusing to testify to facts which might tend to incriminate or degrade her, she consistently refused to give the man's name. Consequently, at this point the court is blocked in its efforts to bring him to account, if indeed any useful purpose would be served at this time in bringing to light a state of facts which might simply result in the breaking up of his own family. My learned colleague Justice JACOB PANKEN of the Court of Domestic Relations in the city of New York, pointed out in the case of " Galati " v. " Galati " (195 Misc. 116) the injustice of allowing a man to live in illicit relationship with a woman who had borne him a child, and to support her and the child while he neglects to support his own family who become subjects of public relief. Here we have a man who brings a large brood of children into the world and assumes no responsibility whatever as to their support. The taxpayers who get wind of a situation like this feel outraged about it. Reports come to the court of the woman and her children stepping into a nice station

wagon and starting off for the beach on a Sunday morning while the neighbors know that they are all burdens on the taxpayers. During my long experience I have seen many cases which highlight the injustice and the tragedies which grow out of situations similar to these, but I have never seen one which is quite so extreme. It seems worthwhile to write this if it evokes thought by welfare workers and others as to the importance of attempting to control such situations when they first develop, and if it enlightens them as to the contribution which the law can make. As Justice PANKEN remarked in his excellent opinion, the welfare workers have no right to substitute their judgment for that of the court which is constituted by law to entertain complaints and pass upon the question of what ought to be done in such matters. Through their unfamiliarity with the law and their inertia, they neglect to bring many cases to the courts at a time when effective action might be taken to prevent extreme situations from developing. After thoroughly considering the situation, particularly as to whether a sentence should be imposed upon the woman in the case because of her immoral conduct, and after considering the effect upon the seven innocent children, I have thought it best to suspend sentence and place her on probation, after having received her promise to terminate all relations with the man with whom she has been involved. We believe that we know who he is, and further efforts will be made to prove it through legal means. In view of the discussion which has appeared in periodicals, law reports and elsewhere with respect to the jurisdiction and power of the Children's Courts to deal with adults, parents and others who contribute to the delinquency and neglect of children, it seems timely for me to release this opinion which involves so many elements which must be considered in all such cases.